**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**FIRSTBANK,**

         **CASE NO.**

   **Plaintiff,**

**v.**

**RESMAC, INC.**

   **Defendant.**

_____/

## COMPLAINT

Plaintiff FirstBank files this complaint against defendant ResMac, Inc., and in support states as follows:

## NATURE OF THE ACTION

1.  FirstBank brings this breach of contract action against ResMac, Inc. to recover in excess of $1,000,000.00 in damages, as well as interest, fees, costs, and any further actual or consequential damages caused by ResMac's breach of a loan purchase agreement after, among other breaches, ResMac refused to repurchase three residential mortgage loans it sold to FirstBank, and after ResMac refused to make other payments to FirstBank due under the loan purchase agreement.

## JURISDICTION, PARTIES, AND VENUE

2.  This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and FirstBank and ResMac are citizens of different states.

3.      Plaintiff FirstBank is a Tennessee state chartered bank with its main office and principal place of business in Nashville, Davidson County, Tennessee.  FirstBank is not a corporation registered in Florida.

4.      Defendant ResMac, Inc. is a Florida corporation with its principal place of business in Delray Beach, Palm Beach County, Florida.

5.      Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district in Palm Beach County, Florida.

6.      All conditions precedent to the maintenance of this action have been met, waived, or have occurred.

## GENERAL ALLEGATIONS

### The Loan Purchase Agreement

7.      ResMac is a national residential mortgage lender engaged in the business of, among other things, originating and selling residential mortgage loans.

8.      FirstBank and ResMac entered into  Loan Purchase Agreement (the **Agreement**) on August 9, 2016 setting forth terms and conditions under which ResMac agreed to sell to FirstBank, and FirstBank agreed to purchase from ResMac, residential mortgage loans.  A copy of the Agreement is attached as **EXHIBIT A**.

9.      Paragraph 1 of the Agreement expressly incorporates by reference FirstBank's Correspondent Seller's Guide (**Seller's Guide**).  A copy of the Seller's Guide is attached as **EXHIBIT B**.

2

10.     Pursuant to paragraph 7 of the Agreement, ResMac agreed to make "all representations, warranties, and covenants to FirstBank set forth in the Seller's Guide, as amended from time to time."

11.     Pursuant to the Seller's Guide and Agreement, ResMac agreed, among other things, that for each loan it "originated under either the Fannie Mae or Freddie Mac conventional mortgage programs, all Warranties, Representations and obligations required under the Agencies' respective selling programs are hereby referenced, made a part of, and incorporated in their entirety into this Seller Guide."

12.     Pursuant to the Seller's Guide and Agreement, ResMac agreed, among other things, that for "[e]ach FHA [Federal Housing Administration] or VA [Veterans Administration] Loan sold to FirstBank meets all requirements and guidelines in effect for such Loan as prescribed by FHA or VA, as applicable, and FirstBank, at the time of FirstBank's purchase."

13.     Pursuant to the Seller's Guide and Agreement, ResMac promised FirstBank, among other things, that for each loan sold, ResMac had "not engaged in any act or omission, and [ResMac] has no knowledge of any act or omission by or on the Mortgagor's behalf or any other person's or coverage or validity, the benefit of the endorsement provided for in, or the validity or binding effect of either."

14.     Pursuant to the Seller's Guide and Agreement, ResMac promised FirstBank, among other things, that for each loan sold, "[n]either the Mortgagor nor any other person or entity involved in the Loan transaction or in its underwriting or documentation (including, without limitation, any appraiser, seller, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction

whether or not [ResMac] was a party to or had knowledge of such misrepresentation or incorrect information, and no error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to the Loan has taken place on the part of the [ResMac] or any other party involved in the Loan's origination or in the application of any insurance in relation to such Loan."

15.     Pursuant to the Agreement and Seller's Guide, ResMac agreed, among other things, that its representations, warranties, and covenants to FirstBank as set forth in the Seller's Guide survived the sale of a loan to FirstBank.

16.     Pursuant to the Agreement and Seller's Guide, ResMac agreed, among other things, to repurchase any loan it sold to FirstBank in the event the loan caused ResMac to breach its representations, warranties, or covenants to FirstBank.

17.     Pursuant to the Agreement and Seller's Guide, ResMac agreed, among other things, to repurchase any loan it sold to FirstBank when the loan's certificate of mortgage insurance was not duly issued by FHA, VA, or a mortgage insurance company or guarantor (collectively **Mortgage Insurer**) acceptable to FirstBank.

18.     Pursuant to the Agreement and Seller's Guide, ResMac agreed, among other things, to repurchase any loan it sold to FirstBank when a Mortgage Insurer cancels coverage on the loan due to fraud, misrepresentation or omission of a material fact or for any other reason related to the eligibility of the loan for mortgage insurance or guaranty.

19.     Pursuant to the Agreement and Seller's Guide, ResMac agreed, among other things, to repurchase any loan it sold to FirstBank when a borrower or any other party to the loan transaction made any false representation in conjunction with such transaction, whether or not ResMac was a party to or had knowledge of such false representation.

4

20.     The Agreement and Seller's Guide gives FirstBank the sole discretion to determine whether a loan requires repurchase under the terms of the Agreement and Seller's Guide.

21.     ResMac has breached the Agreement and Seller's Guide and has caused damage to FirstBank.

22.     ResMac's breaches of the Agreement and Seller's Guide has resulted in total amounts due to FirstBank in excess of $1,000,000.00, excluding interest and other amount ResMac owes FirstBank.

23.     Under the Agreement and Seller's Guide, FirstBank is under no obligation to provide ResMac with a notice of or an opportunity to cure any occurrence of any breach of the representations, warranties or covenants, or of the occurrence or existence of any other default under the Agreement and Seller's guide.

24.     FirstBank has hired the undersigned law firm and agreed to pay its reasonable attorney's fees and costs.

25.     Pursuant to the Agreement and Seller's Guide, ResMac is obligated to pay FirstBank's attorneys' fees it incurs in enforcing the Agreement and Seller's Guide.

### The Defective Loans

26.     Identified below, ResMac sold FirstBank at least three loans (collectively, the **Defective Loans**) that:  **(a)** were underwritten and originated based upon materially inaccurate information or upon material misrepresentations made by the borrower; and/or **(b)** for which Mortgage Insurers either refused to issue a policy or rescinded coverage.

54456740;2

27.     Despite no obligation to provide notice, FirstBank sent notice to ResMac of these defects and demanded ResMac repurchase the Defective Loans.  A copy of FirstBank's notice is attached as **EXHIBIT C**.

28.     ResMac refused to repurchase the Defective Loans as required by the Agreement and Seller's Guide.

### The Sampson Loan

29.     On or about April 17, 2017, ResMac originated a FHA residential mortgage loan for $225,834.00, originating loan number ending in 7736, given to James Sampson (the **Sampson Loan**).

30.     ResMac sold the Sampson Loan to FirstBank on May 2, 2017.

31.     The Sampson Loan failed to meet FHA guidelines because Mr. Sampson was previously denied an FHA loan and ResMac failed to provide sufficient evidence demonstrating the conditions causing his prior rejection no longer applied.

32.     ResMac's failure resulted in FHA refusing to issue mortgage insurance for the Sampson Loan.

33.     Mr. Sampson defaulted on the Sampson Loan by failing to make his monthly mortgage payments.

### The Williams Loan

34.     On or about January 19, 2018, ResMac originated a residential mortgage loan for $342,000, originating loan number ending in 5633, given to Vanessa Williams (the "Williams Loan").

35.     During the loan application process, Williams submitted false banking account statements overstating her assets.

36.     Williams also submitted false employment documentation.

37.     ResMac failed to verify the false account statements and employment documentation prior to issuing the loan.

38.     ResMac sold the Williams Loan to FirstBank on February 1, 2018.

39.     After FirstBank purchased the Williams Loan, the Mortgage Insurer reviewed the loan, including independent efforts to verify Ms. Williams' account statements and employment documentation.

40.     Upon learning the account statements and employment documentation was false, the Mortgage Insurer rescinded coverage of the Williams Loan.

41.     FirstBank self-reported the issue to Fannie Mae, whom had purchased the Williams Loan from FirstBank.

42.     Fannie Mae demanded FirstBank repurchase the Williams Loan due to the misrepresentations ResMac overlooked during origination.

43.     FirstBank repurchased the Williams Loan from Fannie Mae for $360,479.85 on January 24, 2020.

44.     Ms. Williams defaulted on the Williams Loan by failing to make her monthly mortgage payments.

**The Flores Loan**

45.     On or about March 8, 2018, ResMac acquired a residential mortgage loan for $405,000, originating loan number ending in 4914, given to Luis Flores II (the **Flores Loan**).

46.     Mr. Flores's income was incorrectly calculated during underwriting such that he should not have qualified for the loan.

47.     ResMac failed to verify the accuracy of Mr. Flores's income calculations.

7

48.     ResMac sold the Flores Loan to FirstBank on April 13, 2018.

49.     After FirstBank purchased the Flores Loan, the Mortgage Insurer reviewed the loan, including verification of Mr. Flores's income.

50.     The Mortgage Insurer discovered the miscalculated income and rescinded coverage of the Flores Loan.

51.     FirstBank self-reported the issue to Fannie Mae, which had purchased the Flores Loan from FirstBank.

52.     Fannie Mae demanded FirstBank repurchase the Flores Loan due to the miscalculated income ResMac overlooked before selling the loan to FirstBank.

53.     FirstBank repurchased the Flores Loan from Fannie Mae for $426,658.82 on January 24, 2020.

54.     Mr. Flores defaulted on the Flores Loan by failing to make her monthly mortgage payments.

## COUNT I –BREACH OF CONTRACT (Sampson Loan)

55.     FirstBank re-alleges the allegations in paragraphs 1 – 33 of this complaint as if fully set forth herein.

56.     Under the Agreement and Seller's Guide, ResMac warranted to FirstBank the Sampson Loan was insurable and otherwise met FHA requirements.

57.     Because the Sampson Loan is not insurable, ResMac is in breach of the Agreement and Seller's Guide and is required to repurchase the Sampson Loan.

58.     FirstBank notified ResMac of its obligation to repurchase the Sampson Loan.

59.     ResMac refused its obligation to repurchase the Sampson Loan.

54456740;2

60. ResMac's breach of the Agreement and Seller's Guide and refusal to repurchase the Sampson Loan has caused FirstBank damages in the amount of at least $263,789.62, plus interest and other damages, which damages will continue to accrue.

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, awarding FirstBank any and all damages allowable under law, attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

## COUNT II –BREACH OF CONTRACT (Williams Loan)

61. FirstBank re-alleges the allegations in paragraphs 1 – 28 and paragraphs 34 - 44 of this complaint as if fully set forth herein.

62. Under the Agreement and Seller's Guide, ResMac warranted to FirstBank the Williams Loan was insurable.

63. Under the Agreement and Seller's Guide, ResMac warranted to FirstBank the Williams Loan was originated free of any false representations.

64. Because the Williams Loan is not insurable, ResMac is in breach of its warranties to FirstBank under the Agreement and Seller's Guide and is required to repurchase the Williams Loan.

65. Because the Williams Loan was originated based on false representations, ResMac is in breach of its warranties to FirstBank under the Agreement and Seller's Guide and is required to repurchase the Williams Loan.

66. FirstBank notified ResMac of its obligation to repurchase the Williams Loan.

67. ResMac has refused or otherwise ignored its obligation to repurchase the Williams Loan.

54456740;2

68.     ResMac's breach of the Agreement and Seller's Guide and refusal to repurchase the Williams Loan has caused FirstBank damages in the amount of at least $360,479.85, plus interest and other damages, which damages will continue to accrue.

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, awarding FirstBank any and all damages allowable under law, attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

## COUNT III –BREACH OF CONTRACT (Flores Loan)

69.     FirstBank re-alleges the allegations in paragraphs 1 – 28 and 45 – 54 of this complaint as if fully set forth herein.

70.     Under the Agreement and Seller's Guide, ResMac warranted to FirstBank the Flores Loan was insurable.

71.     Under the Agreement and Seller's Guide, ResMac warranted to FirstBank the Flores Loan was originated free of any false representations.

72.     Because the Flores Loan is not insurable, ResMac is in breach of its warranties to FirstBank under the Agreement and Seller's Guide and is required to repurchase the Flores Loan.

73.     Because the Flores Loan was originated based on false representations, ResMac is in breach of its warranties to FirstBank under the Agreement and Seller's Guide and is required to repurchase the Flores Loan.

74.     FirstBank notified ResMac of its obligation to repurchase the Flores Loan.

75.     ResMac has refused or otherwise ignored its obligation to repurchase the Flores Loan.

54456740;2

76.     ResMac's breach of the Agreement and Seller's Guide and refusal to repurchase the Flores Loan has caused FirstBank damages in the amount of at least $426,658.82, plus interest and other damages, which damages will continue to accrue.

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, awarding FirstBank any and all damages allowable under law, attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

## COUNT IV – SPECIFIC PERFORMANCE (Repurchase)

77.     FirstBank re-alleges the allegations in paragraphs 1 – 54 of this complaint as if fully set forth herein.

78.     FirstBank and ResMac are parties to the Agreement and Seller's Guide.

79.     The Agreement and Seller's Guide is a valid and enforceable contract.

80.     FirstBank substantially performed its obligations under the Agreement and Seller's Guide by, among other things, purchasing loans from ResMac, including the Defective Loans.

81.     ResMac is obligated under the Agreement to repurchase the Defective Loans from FirstBank.

82.     ResMac is able to perform its obligations under the Agreement to repurchase the Defective Loans from FirstBank.

83.     FirstBank is ready, willing, and able to deliver to ResMac the Defective Loans.

84.     ResMac refuses to perform its obligations under the Agreement to repurchase the Defective Loans from FirstBank.

85.   FirstBank has been irreparably harmed by ResMac's failure to repurchase the Defective Loans from FirstBank, for which no adequate remedy at law exists.

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, and for an order that ResMac specifically perform the contract and repurchase the Defective Loans from FirstBank, plus and award of attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

## COUNT V – BREACH OF CONTRACT (Pair-Off Fees)

86.   FirstBank re-alleges the allegations in paragraphs 1 – 28 of this complaint as if fully set forth herein.

87.   The Agreement and Seller's Guide include provisions governing "mandatory commitments" as that term is defined in the Seller's Guide.

88.   Under the Agreement and Seller's Guide, ResMac agreed to pay a penalty to FirstBank known as a pair-off fee if it could not fulfill its mandatory commitment obligations.

89.   ResMac failed to fulfill its mandatory commitment obligations to FirstBank under the Agreement and Seller's Guide on at least six loans.

90.   FirstBank demanded ResMac pay $4,114.98 in pair-off fees pursuant to the Agreement and Seller's Guide.

91.   ResMac refused its obligation to pay FirstBank the pair-off fees.

92.   ResMac's refusal to pay FirstBank pair-off fees constitutes a breach of the Agreement and Seller's Guide.

93.   ResMac's breach of the Agreement and Seller's Guide has caused FirstBank damages in the amount of at least $4,114.98, plus interest and other damages, which damages will continue to accrue.

12

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, awarding FirstBank any and all damages allowable under law, attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

## COUNT VI – BREACH OF CONTRACT (Pay-Off Fees)

94.     FirstBank re-alleges the allegations in paragraphs 1 – 28 of this complaint as if fully set forth herein.

95.     The Agreement and Seller's Guide include provisions governing the rights and obligations in the event of an "early payoff" of a loan sold by ResMac to FirstBank.

96.     Under the Agreement and Seller's Guide, ResMac agreed to refund FirstBank for compensation paid by FirstBank in the event a loan was paid off during the early payoff period.

97.     ResMac sold FirstBank at least one loan where the borrower paid off the loan balance during the early payoff period.

98.     ResMac refused its obligation to refund FirstBank for the early payoff pursuant to the Agreement and Seller's Guide.

99.     ResMac's refusal to refund FirstBank constitutes a breach of the Agreement and Seller's Guide.

100.    ResMac's breach of the Agreement and Seller's Guide has caused FirstBank damages in the amount of at least $2,930.40, plus interest and other damages, which damages will continue to accrue.

54456740;2

**WHEREFORE**, FirstBank requests that this Court enter a final judgment in its favor and against ResMac, awarding FirstBank any and all damages allowable under law, attorney's fees, together with costs, interests, and such other and further relief as the Court deems just and proper.

Dated: May 18, 2021,

**AKERMAN LLP**

*/s/ Justin E. Hekkanen*
Justin E. Hekkanen, Esq.
Florida Bar No.: 33712
Justin.hekkanen@akerman.com
David M. Applegate, Esq.
Florida Bar No.: 28804
david.applegate@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, Florida  32202
Telephone:  (904) 798-3700
Fax: (904) 798-3730

*– and –*

William P. Heller, Esq.
Florida Bar No.: 0987263
Email: william.heller@akerman.com
Las Olas Centre II
350 East Las Olas Blvd., Ste. 1600
Ft. Lauderdale, FL 33301
Telephone: (954) 463-2700
Fax: (954) 463-2224

*Counsel for FirstBank*

14

54456740;2